**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **BRENDA GODWIN** )<br>**O/B/O KEVIN GODWIN**, )<br>  )<br>**Plaintiff** )<br>  )<br>v. )<br>  )<br>**MICHAEL J. ASTRUE**, )<br>**Commissioner of the Social**, )<br>**Security Administration** )<br>  )<br>**Defendant.** ) | **CIVIL ACTION NO. 12-KOB-1142-S** |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

On February 5, 2009, the claimant, Kevin Godwin, applied for a period of disability and disability insurance benefits under Title II of the Social Security Act. (R. 19). The claimant alleges disability commencing on September 1, 2008 because of obesity, degenerative disk disease of the cervical spine, status post surgical reattachment of right foot by history, hypertension, insomnia, status post left posterior frontal cortical infarct, status post foramen ovale, and bipolar disorder. (R. 22).

The Commissioner denied the claim both initially and on reconsideration. (R. 1). The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on November 8, 2010. (R. 19). In a decision dated February 24, 2011, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, ineligible for disability insurance benefits. (R. 37).

The claimant passed away on April 5, 2011, and his wife, Brenda Godwin, substituted as

1

party on April 7, 2011. (R. 7-9). On February 17, 2012, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has exhausted all administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

The claimant presents two issues for review: (1) whether the ALJ gave proper weight to the opinions of Dr. Ronald Moon, a treating physician, and Dr. Bruce Pava, an examining consulting physician; and (2) whether the ALJ properly applied the Eleventh Circuit's pain standard regarding the severity of the claimant's pain.

## III. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is limited. This court must affirm the Commissioner's decision if he applied the correct legal standards and if substantial evidence supports his factual conclusions. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No...presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

The ALJ must state with particularity the weight given different medical opinions and the reasons therefor, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The

ALJ must give the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Commissioner*, 363 F.3d 1155, 1159 (11th Cir. 2004). The Commissioner may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight and those reasons are supported by substantial evidence, the ALJ commits no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

The ultimate issue of disability is left to the determination of the Social Security Commissioner and the statement by a medical source that a claimant is "disabled' is not binding. 20 C.F R. § 404.1527 (e). The ALJ must give substantial weight to the medical opinion of a claimant's treating physician, but the ALJ is not forced to base his conclusion on the determination of disability by a physician or outside entity. *Symonds v. Astrue*, 448 Fed. Appx. 10, 12 (11th Cir. 2011).

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529. The ALJ may consider a claimant's daily activities in evaluating and discrediting complaints of disabling pain. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

## V. FACTS

The claimant completed the 12th grade and was forty-nine years old at the time of the administrative hearing. (R. 63). His past work experience involved owning and operating a satellite installation company. (R. 63). The claimant alleged he was unable to work because of obesity, degenerative disk disease of the cervical spine, status post surgical reattachment of right foot by history, bipolar disorder, hypertension, status post left posterior frontal cortical infarct (stroke), status post patent foramen ovale, and insomnia. (R. 22). The claimant testified that injuries from two vehicular accidents cause him pain in the right foot, back, and neck. (R. 64, 65).

*Physical and Mental Limitations*

In 1975, the claimant sustained injury detaching his right foot in a motorcycle accident. (R. 64). A surgical procedure reattached the foot using titanium screws and pins. (R. 79). On November 1, 2000, another surgical procedure fused the claimant's toes to prevent further arthritis and to stabilize the right foot and ankle. (R. 64).

On March 5, 2001, the claimant broke his C2 vertebra in a car accident. (R. 72). The claimant also has degenerative disk disease from the C3 to the C7 vertebra. He has a hole in the left side of the C6 vertebra, and the C6 vertebra is displaced. (R. 65).

The record is then silent until May of 2003, when an MRI by Dr. Robert Naftel at Highlands Diagnostic Center indicated reversal of the normal cervical curve, ventral defects on the thecal sac at C4-5, C5-6, and C6, and a small disk herniation at C6-7. (R. 237). In February of 2007, Dr. Scott Morris noted that the claimant had right foot arthritis for which the claimant received an epidural steroid injection. (R. 241). On March 24, 2007, the claimant received another epidural steroid injection for pain in the right foot from Dr. Morris.

In January of 2008, the claimant received pain management because of continued low back pain, shoulder pain, and foot pain. The claimant described his average pain level as a 5. On January 8, 2008 he received a caudal epidural steroid injection that temporarily relieved his pain and he did not refill his medications that month.

In February of 2008, the claimant again experienced low back pain, shoulder pain, and foot pain. He received an epidural steroid injection from Dr. Mark Downey at the Birmingham Surgery Center. Dr. Moon, the claimant's pain management doctor, prescribed 50 mg of Lyrica. The claimant continued to present for management of his pain in March, April, May and June of 2008. Dr. Moon increased the dosage of Lyrica to 75 mg in March of 2008, 100 mg in August, and 150 mg in September. (R. 347-394). The claimant continued to rate his pain level at a 5. (R. 242).

On September 13, 2008, Dr. David Bryant admitted the claimant to St. Vincent's hospital because of a stroke with altered mental status. Dr. Bryant attributed the altered mental status to the claimant's medication, blood alcohol level, and bipolar disorder. An MRI indicated a posterior frontal cortical infarct and confirmed a herniated disk at C7. Dr. Bryant noted a patent foramen ovale, a hole between the right and left upper chambers of the heart, and treated the condition with Coumadin. Dr. Bryant discharged the claimant a week later.

On November 4, 2008, Dr. Moon increased the claimant's Lyrica prescription to 200 mg per day for pain management.

On December 17, 2008, the claimant again arrived at the St. Vincent's emergency room with a possible stroke. A carotid duplex report and CT scan indicated no stroke or hemorrhage. The claimant was stabilized and discharged the next day.

On May 12, 2009, Sally Gordon, Psy.D, psychiatrically examined the claimant at the request of the Social Security Administration. The claimant denied a history of psychiatric difficulties. Dr. Gordon noted that the claimant appeared nervous. She noted that the claimant was able to read and understand the confidentiality statement. Dr. Gordon's diagnostic impression included bipolar disorder with most recent episode manic by history; generalized anxiety disorder; panic disorder; pain disorder associated with general medical condition; insomnia related to anxiety; and rule out alcohol abuse. She indicated that the claimant reported bipolar disorder, panic attacks, and insomnia. Dr. Gordon commented that the claimant's alcohol consumption borders on abuse and that the claimant is likely to have poor concentration in a work environment with situational distractors. (R.452).

Dr. Gordon reported that the claimant described his daily activities as getting up between 5:00 a.m. and 1:00 p.m. and going to bed between 9:00 p.m. and midnight. The claimant reported that he tended to his personal hygiene daily. He reported mowing the grass and sharing housecleaning chores, laundry, shopping, and cooking responsibilities with his wife. He told Dr. Gordon that he was able to drive, and that, during the day, he watched television, walked in the yard, played with the dog, and went fishing. (R. 452).

On April 30, 2009, Dr. Bruce Pava consultatively examined the claimant at the request of the Social Security Administration. He noted swelling and deformity of the claimant's right ankle with scarring consistent with internal fixation of the right ankle fracture. His diagnostic impression included status post operative reduction and internal fixation of an open right ankle fracture in 1975; history of cervical fracture; history of degenerative disc disease of the cervical and lumbar spine; history of bipolar disorder; history of hypertension; history of Barrett's

esophagus; and history of cerebral vascular accident. Dr. Pava opined that the claimant was probably medically disabled by the combination of his listed problems. (R. 446).

Dr. Pava reported that the claimant had a normal and tandem gait. He also indicated that the claimant could walk on his toes and heels without difficulty. Dr. Pava recorded that the claimant could rise from a deep squatting position without difficulty and had full motion of his extremities, joints, and spine. (R. 448).

On August 29, 2009, Dr. Bryant admitted the claimant to St. Vincent's hospital for an altered mental state. Dr. Bryant diagnosed the claimant with pneumonia. Dr. Bryant attributed the altered mental status to the pneumonia. Dr. Bryant treated the claimant for pneumonia and discharged him from St. Vincent's hospital on September 4, 2009.

On June 28, 2010, Dr. Moon, the claimant's treating physician, completed a physical capacities evaluation. Dr. Moon noted that the claimant wore a prescribed back brace; could lift 20 pounds occasionally and 10 pounds frequently; could sit for 8 hours; and could stand and/or walk for 1-2 hours. Dr. Moon opined that the claimant should never push and/or pull, reach, or work around hazardous machinery, dust, or fumes. He reported that the claimant could occasionally bend or stoop and could frequently climb stairs or ladders and grasp, twist, or handle. Dr. Moon also opined that the claimant had pain that was present, intractable, and virtually incapacitating. He reported that physical activity increased the level of pain such that medication would become necessary. Dr. Moon noted that the claimant had an underlying condition consistent with the pain that he experienced. (R. 572).

In August of 2010, the claimant underwent a successful percutaneous closure of the patent foramen ovale.

*The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ on November 8, 2010. (R. 19). At the hearing, the claimant testified that his pain was in his neck, back, and both feet. He testified that both movement and changes in weather worsen the severity of pain in his neck.

He also testified that the pain in his back remained stationary, coming and going with activity. (R. 78). He testified that both feet were in constant pain from the ankle down. (R. 82). The claimant testified that the pain he experienced on a daily basis was a 9 or 10 on a 10 point scale. (R. 69). He testified that the pain in his back was the least debilitating and the least frequent and that the pains in his feet and neck remained constant. He also testified to having difficulty in moving both his neck and right ankle, especially while driving. (R. 86).

The claimant testified that he had been diagnosed with bipolar disorder. He testified to experiencing mood swings and having concentration or memory problems. (R. 65). The claimant stated that he loses track of items or cannot remember information. He also testified that he took medication to regulate mood swings. (R. 83).

The claimant testified that his foot, back, and neck make movement difficult. He testified that when shaving or brushing his teeth, he needed to sit down. He also testified that he could not sleep on his back for very long and could not lay on his stomach for any length of time. The claimant reported that he slept for 2 or 4 hours a night because of discomfort. He also testified that he could stand for 10 to 15 minutes. He stated that he could sit for 4 hours but that walking less than a block was difficult. (R. 66-68). He also testified that driving a vehicle presents issues because of difficulty maintaining pressure with his right foot. (R. 70).

The claimant testified that when he became unable to work, he owned a satellite installation company. He stated that his wife and mother took care of the books, but that he no longer owned the company after he became unable to work. He testified that his last day of work was August 27, 2007 and that he had not worked since then. He also testified that his wife went to work at a bank and his medical insurance was through her job. He reported that a normal day consisted of taking care of the family dog, doing chores around the house, and performing general hygiene tasks. (R.73)

A vocational expert, Mr. Long, testified concerning the type and availability of jobs that the claimant was able to perform. (R. 86-95). He stated that the employment the claimant had previously held would be hard to replicate because it involved a family business. Mr. Long indicated that the claimant could perform sedentary jobs. The ALJ asked Mr. Long to assess a hypothetical involving an individual with the following characteristics: had limited education; average IQ; could perform light work with occasional bending and stooping; could not push, pull, drive, or climb; and had to work in a temperature controlled environment. Mr. Long testified that such an individual could work as a hand packer or toll collector. Mr. Long testified that both jobs exist in significant numbers in the Alabama and national economy. (R. 88). Mr. Long testified that 1,000 packing jobs exist at the sedentary level.

The ALJ asked Mr. Long if the claimant would be able to return to his past relevant work. Mr. Long responded that installation of satellites would exceed the restrictions placed on the claimant. (R. 89).

The ALJ then asked Mr. Long if any jobs were available that would allow the claimant to sit or stand at his own option. Mr. Long stated that such a limitation would eliminate the packing

and assembly jobs, as well as the sedentary jobs. Mr. Long explained that sedentary jobs would require the claimant to sit to do the work. (R. 90).

The ALJ then set aside the sit/stand limitation and asked what jobs would be available for the claimant if he could only turn his neck occasionally. Mr. Long responded that sedentary jobs would still be available in Alabama, but only around 2,000 because some of the sedentary assembly or packing jobs would require neck movement. (R.91).

The ALJ further questioned Mr. Long by asking him if jobs were available where the claimant would not be able to bend or stoop. Mr. Long responded that around 2,000 assembly jobs, 1,500 packing jobs, and all toll jobs would meet that change. The ALJ also asked Mr. Long if at any of these jobs an employee could lie down during any of these jobs. Mr. Long responded that no jobs would permit the claimant to lie down during work hours. (R. 92-93).

Finally, the ALJ asked Mr. Long if the claimant's moderate to severe limitation on concentrating would preclude him from these jobs. Mr. Long said that it would preclude all work. (R. 94).

*The ALJ's Decision*

On February 24, 2011, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 16). First, the ALJ found that the claimant had not engaged in substantial gainful activity since the alleged onset of his disability. (R. 22). Next, the ALJ found that the claimant's obesity, degenerative disc disease of the cervical spine, status post surgical reattachment of right foot by history, and bipolar disorder did constitute severe impairments; he concluded, however, that these impairments did not singly or in combination manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R. 22-23).

The ALJ determined that the claimant's hypertension, stroke, status post patent foramen ovale, and insomnia did not constitute severe impairments. The ALJ indicated that the claimant alleged no ongoing restrictions due to those conditions. The ALJ noted that the doctors treated and discharged the claimant after his stroke. He also noted that the patent foramen ovale was treated with Coumadin but that in 2010 the claimant underwent a successful procedure to close the patent foramen ovale. The ALJ noted that the medical record indicated that the claimant's hypertension and insomnia were controlled with medicine. (R. 22).

The ALJ next considered the claimant's subjective allegations of pain to determine his residual functional capacity. (R. 26). The ALJ found that the claimant's "impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 27). The ALJ stated that no evidence was presented showing that the claimant's performance of light sedentary work would put strain on the claimant's joints or body. (R. 32).

The ALJ also examined the condition of bipolar disorder. The ALJ concluded that the record showed no clear diagnosis of bipolar disorder. The ALJ found no indication that the claimant received medication or that the claimant received any mental health treatment or counseling. The ALJ also noted that the claimant's "altered mental state" in August 2009 was attributed to a secondary infection when he was hospitalized with pneumonia. (R. 33).

The ALJ considered and gave great weight to the claimant's treating physician's, Dr. Moon, assessment that the claimant had chronic pain that required medication and that the claimant was capable of a range of light work. The ALJ stated that, although Dr. Moon reported

"that the claimant had virtually incapacitating pain such that medication is necessary," the record established that the claimant's pain is controlled by a medication regiment, therapy, and treatment. (R. 34). The ALJ also considered Dr. Moon's report that the claimant was able to sit for 8 hours and stand for 1-2 hour during a regular 8-hour work day.

The ALJ gave some weight to the opinion of the examining consulting physician, Dr. Pava. Dr. Pava concluded that the claimant was "probably medically disabled." The ALJ did not rely on Dr. Pava's conclusion, stating that a finding of disability is solely reserved for the Commissioner. The ALJ did consider the findings in Dr. Pava's report, but concluded the findings were not consistent with a finding of disability.

The ALJ noted that Dr. Pava's report noted normal and tandem gait of the claimant, no difficulty in walking on his toes and heels, and no difficulty rising from a deep squatting position. The ALJ also stated that the report indicated that the claimant had full active motion in all joints, extremities, and spine. The ALJ acknowledged that the report noted swelling and deformity of the right ankle consistent with the right ankle injury. (R. 35).

The ALJ next considered the claimant's subjective complaints with the guidelines provided by Social Security Ruling 96-7p. The ALJ applied the controlling pain standard of the Eleventh Circuit and concluded that the claimant's pain left him capable of a range of light work. The ALJ found that the claimant was capable of simple, repetitive, and unskilled tasks. To support his conclusion, the ALJ relied on testimony from the claimant that he drives, shops, reads, and uses the internet. The ALJ also relied on claimant's testimony that he helps with household chores like cooking and cleaning, as well as playing with the family dog and going fishing. (R. 33).

The ALJ also considered testimony given by the claimant to Dr. Gordon describing his daily activities. The ALJ gave significant weight to Dr. Gordon's opinion because it was consistent with the record and gave detailed findings based upon direct examination of the claimant and review of the evidence on record.

The ALJ then considered testimony from the vocational expert, Mr. Long, that the claimant could perform a range of light work including assembly worker, hand packer, and toll collector. The ALJ found that the claimant has the residual functional capacity to perform a range of light work. The ALJ found the claimant unable to perform his former occupation, but found the claimant able to perform other work within the economy, including hand packer and toll collector jobs. Based on these findings and testimony from the vocational expert, the ALJ concluded that the claimant retains the capacity for light work that exists in significant numbers in the national economy and, therefore, is not disabled under the Social Security Act. (R. 36).

## VI. DISCUSSION

I.  Weight of physician opinions

The claimant argues that the ALJ improperly discounted the opinions of Dr. Moon, a treating physician, and Dr. Pava, an examining consulting physician. The court finds that the ALJ gave correct weight to both physicians' medical opinions, explained his reasons, and that substantial evidence supports his decision.

The ALJ must state the weight given to each physician's medical opinion. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ may reject a medical opinion if evidence in the record supports an alternate finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). If the ALJ indicated

reasons supported by substantial evidence for giving the opinion of a treating physician less weight, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

The ALJ correctly assigned considerable weight to Dr. Moon, a treating physician. The ALJ noted that the testimony by Dr. Moon that the claimant had chronic pain that required medication conflicted with Dr. Moon's indication that the claimant was capable of a range of light work. The ALJ gave considerable weight to Dr. Moon's opinion that the claimant was capable of light work because Dr. Moon was a treating physician and his finding that the claimant could perform a range of light work was consistent with the ALJ's determination of the claimant's residual functional capacity. The ALJ reasonably relied on Dr. Moon's evaluation that the claimant could not push nor pull, but could climb stairs, bend, and stoop, and that the claimant could stand for 1-2 hours and sit for 8 hours because these findings are consistent with the record as a whole. The ALJ noted the information in Dr. Moon's report regarding the alleged level of pain, claimant's pain, but the ALJ specifically articulated that the record showed that the claimant's pain was managed with medication and treatment.

The ALJ correctly gave some weight to the opinion of Dr. Pava, the examining consulting physician. Dr. Pava concluded that the claimant was likely medically disabled, but the ALJ did not rely on that conclusion. The ALJ correctly indicated that a finding of disabled is for the Commissioner to make. The ALJ noted that Dr. Pava's conclusion was inconsistent with Dr. Pava's own medical observations of the claimant. The ALJ indicated that Dr. Pava reported that the claimant exhibited no difficulty rising from a squatting position, walking on his toes or heels, and walked with a normal and tandem gait. The ALJ also noted that Dr. Pava indicated that the claimant had full active motion of all joints and spine. The ALJ indicated that Dr. Pava's report

was consistent with the medical evidence as a whole and was supported by other medical evidence; the ALJ then properly gave Dr. Pava's medical observations some weight because the report was supported by other substantial medical evidence.

The court finds that the ALJ correctly applied the law in assessing the weight for both Dr. Moon and Dr. Pava and articulated his reasons for weighing their opinions as he did. The court also finds that substantial evidence supports the ALJ's decision to give considerable weight to Dr. Moon and some weight to Dr. Pava. Based on the explicit findings of the ALJ, this court concludes that he articulated reasons for the weight given to both Dr. Moon and Dr. Pava.

II. Application of the pain standard

The claimant also argues that the ALJ improperly applied the Eleventh Circuit's pain standard. To the contrary, this court finds that the ALJ properly applied the pain standard and that substantial evidence supports his decision.

The pain standard applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1219, 1223 (11th Cir. 1991). "The pain standard requires evidence of an underlying medical condition and *either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id*. (emphasis added). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

In applying the standard, if the ALJ decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown v.*

*Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Failure to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that the court accept the testimony as true. *Id*.

In this case, the ALJ conceded that the claimant suffers from an underlying medical condition capable of generating pain; however, he found that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible to the extent they are inconsistent with the residual function capacity assessment.

The ALJ articulated his reasons for discrediting the claimant's alleged severity of pain. First, the ALJ referenced the claimant's daily activities in assessing his pain. The ALJ noted that the claimant indicated in testimony before the ALJ and to Dr. Gordon that he drives, shops, reads, and uses the internet. The ALJ also indicated that the claimant testified that he helps with household chores, plays with the dog, goes fishing, and maintains his own personal hygiene. The ALJ noted that the claimant testified at the ALJ hearing and told Dr. Gordon that he cooked, vacuumed, took care of the family dog, did laundry, and washed dishes. The claimant indicated during the ALJ hearing that he washed, folded, and put away clothes. The claimant also stated that he tried to take strolls outside.

The ALJ correctly found that the claimant's testimony regarding his daily activities conflicts with his allegations regarding the limitations of his pain.

The ALJ also examined the differences between the claimant's testimony and Dr. Moon's opinion regarding the claimant's ability to sit, stand, and other postural limitations. The claimant testified that he could stand for 10 minutes or sit for 4 hours. However, the ALJ noted that Dr. Moon, his treating physician, indicated that the claimant can stand for 1-2 hours and sit for 8

17

hours. The ALJ properly noted that even though Dr. Moon opined that the claimant had incapacitating pain, Dr. Moon still indicated that the claimant could climb stairs, grasp, twist, bend and stoop occasionally, and operate motor vehicles for short distances. The ALJ correctly noted Dr. Moon's assessment that the claimant's pain is managed with medication and treatment. The ALJ correctly applied the pain standard and substantial evidence supports his findings regarding the claimant's allegations of pain.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED.

A separate Order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 24th day of September 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE